| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 4:16-CR-25(4) |
| § | |
| KENNETH DEMARCUS CASH § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Kenneth Demarcus Cash's ("Cash") *pro se* Motion for Compassionate Release (#319), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the United States Supreme Court's opinion in *United States v. Davis*, ___ U.S. ___, 139 S. Ct. 2319 (2019). The Government filed a response in opposition (#324) and Cash filed a reply (#325). After conducting an investigation, United States Probation and Pretrial Services ("Probation") prepared a report. Having considered the motion, the Government's response, Cash's reply, Probation's report, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On October 12, 2016, a federal grand jury in the Eastern District of Texas returned a 17-count First Superseding Indictment charging Cash in Count 1 with Conspiracy to Commit 924(c)—Use, Carry, Possess Firearms During, in Relation to, and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and (o); in Count 2 with Conspiracy to Commit Theft of Firearms, in violation of 18 U.S.C. § 371; in Count 3 with Conspiracy to Possess Stolen Firearms, in violation of 18 U.S.C. § 371; in Count 8 with Carjacking, in violation of 18 U.S.C. § 2119; in Count 9 with Use, Carry, and Possess Firearms During, in Relation to, and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c); in Counts 10, 12, and 14

with Theft of Firearms, in violation of 18 U.S.C. § 924(l); and in Counts 11, 13, and 15 with Possession of a Stolen Firearm, in violation of 18 U.S.C. § 922(j). Cash was not named in the remaining counts. On April 25, 2017, Cash pleaded guilty to the offenses charged in Counts 1, 8, and 9 of the First Superseding Indictment pursuant to a Rule 11(c)(1)(C) plea agreement; the court dismissed the remaining counts. Subsequently, on April 4, 2018, the court sentenced Cash to an agreed sentence of 300 months' imprisonment, to be followed by a five-year term of supervised release. Cash is currently housed at Federal Correctional Institution Beaumont Low ("FCI Beaumont Low"), located in Beaumont, Texas. His projected release date is December 20, 2037.

II.    Analysis

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>    (i) extraordinary and compelling reasons warrant such a reduction; or
>
>    (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the

>    defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

  A.  <u>Exhaustion of Administrative Remedies</u>

  Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though

[the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this instance, Cash submitted a request for "a non-medical Compassionate Release," dated January 21, 2021, to the warden of the facility where he was housed based on the Supreme Court's holding in *Davis* and the "BOP's inability to curtail the spread of COVID-19." Warden F. J. Garrido ("Warden Garrido") denied Cash's request on March 19, 2021. Cash appealed

Warden Garrido's decision and, on June 3, 2021, Regional Director J. Baltazar denied Cash's appeal, noting:

> [T]he offense which underlies your 18 U.S.C. § 924 convictions is Carjacking in violation of 18 U.S.C. § 2119, which appears to have as an element the use, attempted use, or threatened use of force. Therefore, it appears your 18 U.S.C. § 924 convictions fall under the "elements" or "force" clause of 18 U.S.C. § 924(c)(3)(A) and not the "residual" clause of 18 U.S.C. § 924(c)(3)(B).

Although Cash complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id*. at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id*. at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id*.; *accord United States*

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States

*v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only

---

Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). At present, the Commission has only one voting member.

6

motions filed by the Director of the BOP. *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). A review of dictionary definitions also sheds light on the meaning of these terms. The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

1.   Post-Conviction Change in Law

In his motion, Cash asserts that his "convictions and sentences under 18 U.S.C. § 924(c) are no longer constitutionally valid in light of the Supreme Court's decision in *United States v. Davis*." Section 924(c)(1) punishes individuals who knowingly possess a firearm in furtherance of a crime of violence or a drug trafficking crime. 18 U.S.C. § 924(c); *United States v. Johnson*, 943 F.3d 214, 222 (5th Cir. 2019); *United States v. Suarez*, 879 F.3d 626, 632 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 279 (2019). The statute mandates the imposition of a five-year, consecutive sentence upon a person who uses or carries a firearm in furtherance of such a crime. *See* 18 U.S.C. § 924(c)(1)(A)(i); *Suarez*, 879 F.3d at 632. A person who brandishes or discharges a firearm in connection with such a crime is subject to a consecutive term of imprisonment of seven or ten years, respectively. *See* 18 U.S.C. § 924(c)(1)(A)(ii)-(iii). Section 924(c)(3) defines a crime of violence as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924; *see Davis*, 139 S. Ct. at 2324. In *Davis*, the Supreme Court struck down § 924(c)(3)(B), or the residual clause, for being "unconstitutionally vague." 139 S. Ct. at 2336. Nevertheless, an offense may still be a "crime of violence" if it meets the definition contained within the "elements clause," § 924(c)(3)(A). *See United States v. Taylor*, ___ U.S. ___, 142 S. Ct. 2015, 2022 WL 2203334, at *8 (2022); *Lang v. Johnson*, 847 F. App'x 233, 234 (5th Cir. 2021); *In re Fields*, 831 F. App'x 710, 711 (5th Cir. 2020).

Here, Cash pleaded guilty to the offenses charged in Counts 1, 8, and 9 of the First Superseding Indictment, namely, Conspiracy to Commit 924(c)—Use, Carry, Possess Firearms During, in Relation to, and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and (o); Carjacking, in violation of 18 U.S.C. § 2119; and Use, Carry, and Possess Firearms During, in Relation to, and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c). According to the First Superseding Indictment and Cash's signed Factual Basis, the predicate offense for Cash's § 924(c) conviction is carjacking. The Fifth Circuit has held that carjacking is a crime of violence under § 924(c)(3)(A) because "it 'has as an element the use, attempted use, or threatened use of physical force.'" *In re Fields*, 831 F. App'x at 711; *accord Lang*, 847 F. App'x at 233-34. Similarly, Cash's § 924(o) conviction, Count 1 of the First Superseding Indictment, is based on the predicate offense of carjacking as set forth in the Factual Basis. The Factual Basis provides, in relevant part:

> 5. I, Kenneth Demarcus Cash, knowingly conspired to use, carry, possess, and brandish firearms in furtherance of a violent crime for which I may be prosecuted in a Court of the United States, to wit: carjacking.
>
> 6. I, Kenneth Demarcus Cash, along with other[s], did knowingly and intentionally, with intent to cause serious bodily harm, [] take a motor vehicle, to wit: a 2014 Audi Q7, VIN number WA1LGAFE1ED0044294, that had been transported, shipped[,] and received in interstate and foreign commerce from the person and presence of another by force, violence[,] and by intimidation by brandishing firearms.

Therefore, the Supreme Court's holding in *Davis* has no effect on Cash's convictions, as they were not based on a "crime of violence" as defined by the "residual clause" of § 924(c)(3)(B), but by the "elements clause" of § 924(c)(3)(A).

> Moreover, in his signed Plea Agreement, Cash agreed to the following:
>
> The defendant understands that although his guideline range for this offense may be lower than this twenty-five year sentence, the defendant understands that this sentence encompasses the fact that he brandished firearms on other occasions. Had the defendant been charged and convicted of these additional firearm offenses, he would have faced a substantially higher sentence which would have run consecutively to one another.

Probation observed in Cash's Presentence Investigation Report:

> In addition to the conduct in the counts of conviction, the investigative material indicates the defendant is also responsible for committing 5 home invasion offenses, 3 Burglary of Motor Vehicle offenses, 2 Credit Card Abuse offenses, and 1 Burglary of a Habitation offense, over a 15-month period. While this section identifies potential grounds for an upward departure, it is noted that the parties agreed in the binding Plea Agreement that the agreed sentence takes into account his conduct in the instant offense, as well as, conduct outside his counts of conviction.

Because *Davis* is inapplicable under these circumstances, Cash's convictions under § 924(c) and (o) as well as 18 U.S.C. § 2119, and their corresponding sentences, which were agreed to by the parties, do not present an extraordinary and compelling reason warranting his early release.

    2.    <u>Rehabilitation</u>

Cash also maintains that his post-sentence rehabilitation, evidenced by his lack of disciplinary infractions and the programs he has completed, establishes extraordinary and compelling reasons for compassionate release. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and

10

compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)).

Although Cash claims to have attempted to better himself in prison, worked as a barber, mentored other inmates, and recently enrolled in a paralegal program, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the

11

seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release). Similarly, the court hopes that Cash will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on either a purported change in the law or Cash's rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3.

   3. COVID-19

Although he does not present such an argument in his present motion, in his request to the warden of his facility, Cash expressed concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of July 13, 2022, the figures available at www.bop.gov list 1 inmate (out of a total inmate population of 1,967) and 1 staff member at FCI Beaumont Low as having confirmed positive cases of COVID-19, 808 inmates and 63 staff members who have recovered, and 4 inmates who succumbed to the disease. Indeed, according to Cash's medical records, on December 21, 2020, he tested positive for the disease and by January 4, 2021, he had recovered from the virus. Thus, it appears that the facility where Cash is housed is handling the outbreak appropriately and providing adequate medical care.

Although Cash expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Cash, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated. *See United States v. Rodriguez*, 27 F. 4th 1097, 1100

12

(5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release.") (citing *Thompson*, 984 F.3d at 435); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Cash, have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 324,032 doses of the vaccine. According to www.bop.gov, Federal Correctional Complex Beaumont, where the defendant is housed, has fully inoculated 3,636 inmates and 495 staff members. Indeed, according to Cash's BOP medical records, he received the first and second doses of the Moderna vaccine on June 9, 2021, and July 8, 2021, respectively. In the Fifth Circuit and elsewhere, courts have denied early

release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Wakefield*, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) ("Because [the defendant] has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the [d]efendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release

15

to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

      C.     Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Cash's offenses of conviction entail his participation in a conspiracy to use firearms in furtherance of a crime of violence, commission of carjacking, and brandishing a firearm in furtherance of a crime of violence. On July 25, 2015, Cash participated in a home invasion robbery in which he and 2 accomplices armed with automatic weapons entered a home through a garage door, forced the homeowner to open a safe while pointing guns at him and threatening violence if he did not comply, and ordered the homeowner to lie face down on the floor while they stole jewelry and numerous firearms. The robbers then escorted the homeowner to a bathroom and instructed him to count to 100, while Cash took the keys to an Audi and attempted to drive away. During their attempt to flee, Cash and his accomplices hit a fountain and abandoned the vehicle. Thus, as indicated in the Factual Basis, Cash knowingly and intentionally took a motor vehicle that had been transported in interstate

commerce from another by force, violence, and intimidation with the intent to cause serious bodily harm. Cash also knowingly brandished a firearm in furtherance of this violent crime.

Furthermore, Cash participated in a series of home invasions, armed robberies, and vehicle burglaries with codefendants in which numerous firearms and other valuables were stolen over a 15-month period. Cash purchased a Hummer using illegal proceeds from the sale of property stolen during these offenses. During the execution of a search warrant at Cash's apartment, law enforcement officers recovered items that had been stolen during a home invasion in which a resident was shot with a .380 caliber firearm, as well as a bag containing .380 caliber ammunition. Moreover, Cash's criminal history includes prior convictions for burglary of a vehicle, theft, and unlawful possession of fraudulent identification.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). Where, as here, a prisoner has engaged in "severe" criminal conduct and has a significant criminal history, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal"). In view of the nature and circumstances of his offenses of

conviction and his criminal history, the court cannot conclude that Cash's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Cash compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord Rodriguez*, 27 F. 4th at 1100. In the instant case, releasing Cash after he has served only 73 months (or approximately 24%), including good time credit, of his 300-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Cash's track record is similarly a poor one. There is no reason to believe that Cash would not revert to engaging in violent criminal activities—namely, carjackings, armed robberies, and home invasions—as well as the illegal use of firearms, if released from prison at this time.

III. Conclusion

In sum, Cash has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Cash's *pro se* Motion for Compassionate Release (#319) is DENIED.

SIGNED at Beaumont, Texas, this 13th day of July, 2022.

_Marcia A. Crone_

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE